R. W. DECKER ET AL. v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 14 October, 1914.)

1. Courts—Discretion—Verdict Set Aside—Term—Waiver.

The power of a judge of the Superior Court to set aside a verdict is confined to the term wherein the verdict was rendered; but by consent of the parties, expressed or implied, they may waive this legal right and give effect to an order rendered in vacation or at a subsequent term, setting the verdict aside.

2. Same—Substitute Judgment—Compromise—Time Given for Consent—Intent—Interpretation—Practice—New Trial.

Upon motion made in the Superior Court by a party defendant to set aside a verdict of the jury as being against the weight of the evidence, the judge said he would grant the motion as a matter in his discretion, but thought the plaintiff should recover something, stating if the defendant would pay a certain less amount and the plaintiff would take it, he would sign a judgment in that sum. Whereupon the attorneys for both parties requested time in which to communicate with their clients, and until Tuesday of the following week, a criminal term, was given for that purpose. The judge signed an order setting aside the verdict, which was to stand if the parties did not agree, and also a judgment in the amount stated to be substituted for the order, if the parties should agree thereto; and this without objection. The defendant agreed to pay this sum, and on the Tuesday fixed for the purpose the plaintiff's attorney stated he had not yet heard from his client, but on the following day stated that his client had refused to accept the compromise judgment. *Held,* (1)

the plaintiff having waived his legal right that the judge should exercise his discretion to set aside the verdict at the term it was rendered, cannot avail himself of the fact that this was not done; (2) the order setting aside the verdict was the judgment of the court at that term, and the compromise judgment was only to become effective as a substitute if thereafter agreed to by both of the parties, and upon their failure to agree the order for a new trial remained in effect; (3) the reason for the delay being to give the parties time to hear from their clients, and Tuesday being supposed to be sufficient for the purpose, but not the last day, the action of the court on Wednesday, the day following, was valid, especially as plaintiff's conduct implied consent that the court might act on that day; (4) the misunderstanding having arisen from the failure of the court and the parties to effect a compromise, an order granting a new trial would otherwise be proper.

APPEAL by plaintiff from *Peebles, J.,* at August Term, 1914, of PITT.

This action was brought to recover damages for injuries alleged to have been caused by the defendant's negligence, and resulted in a verdict for the *feme* plaintiff upon all the issues. The case on appeal states:

The jury answered the issues in favor of the plaintiff, as set out in the record, and assessed her damages at $5,000. Upon the coming in of the verdict, the defendant moved the court, in its discretion, to set aside the verdict as against the weight of the evidence and excessive in amount of damages. The court being of the opinion that the aforesaid verdict was against the weight of the evidence and excessive in amount, it is thereupon considered, ordered, and adjudged by the court, in its discretion, that the aforesaid verdict of the jury herein rendered be and the same is hereby set aside, vacated, and annulled.          R. B. PEEBLES,
*Judge Presiding.*

Filed 29 August, 1914.
          A. T. MOORE, C. S. C.

It further appears in the case:

"The jury found all the issues in favor of the plaintiff and assessed the plaintiff's damages at $5,000.

"The defendant thereupon moved to set aside the verdict as being contrary to the weight of evidence and excessive. The court said that he was satisfied that the verdict was contrary to the weight of evidence and was excessive, but he thought the *feme* plaintiff ought to have something, and that if she would agree to take $1,700 and costs, the court would not set aside the verdict of the jury; but if she did not agree to take that, the court would set aside the verdict of the jury, in its discretion, as being contrary to the weight of the evidence and excessive; that if the plaintiff agreed to take $1,700 and costs, and the defendant refused to give it, the court would give the judgment upon the $5,000 verdict.

"Whereupon, Mr. L. I. Moore, for the defendant, and S. J. Everett, for the plaintiff, said they would like to have time to consult their respective clients. Mr. Moore said he thought they could hear from the defendant during the next day. Mr. Everett said he didn't think he could hear from the plaintiff before Tuesday of the following week. The court then said it would postpone the motion to set aside the verdict of the jury until the next Tuesday, by consent and without prejudice to either side. No objection was made to that arrangement.

"On 29 August, 1914, Mr. Long, of the firm of Moore & Long, stated to the court that he was afraid, under *Stilley v. Planing Mills,* 161 N. C., 517, the plaintiff would try to take some advantage if the motion to set aside the verdict of the jury was continued until after the civil court expired. Thereupon the court signed two judgments, one setting aside the verdict of the jury in the discretion of the court, on the ground that the verdict was against the weight of evidence and excessive; the other one was a compromise judgment, by consent, for $1,700 and costs. He delivered both judgments to the clerk of the court, with instructions to file both, but not to record either one until they heard from the plaintiff, the defendant having before that time assented to paying the plaintiff $1,700 and costs. The court stated to the clerk that if he heard from the plaintiff, and the plaintiff agreed to take the $1,700, he would tear up the judgment setting aside the verdict of the jury and have the compromise judgment recorded.

"On Tuesday of the second week the court asked Mr. Everett if he had heard from his client, and he said he had not. On Wednesday Mr. Everett said he had heard from his client, and she had declined to accept the $1,700 and costs. Thereupon the court tore up the compromise judgment for $1,700 and directed the clerk to record the judgment setting aside the verdict of the jury. Thereupon Mr. Everett appealed to the Supreme Court. Appeal bond was fixed at $25. Mr. Long, of the firm of Moore & Long, was present in the courthouse at the time."

*S. J. Everett, Julius Brown, and N. W. Outlaw for plaintiff.*

*L. I. Moore and W. H. Long for defendant.*

WALKER, J., after stating the case: It has been settled by decisions of this Court that the judge presiding in the Superior Court has no power to set aside a verdict out of term, or at a subsequent term (*Stilley. v. Planing Mills,* 161 N. C., 577), although the same judge may have presided at both terms, without the consent of the parties; but with their consent he may do so. *Clothing Co. v. Bagley,* 147 N. C., 37. In such a case, and generally also, consent waives the law. The elementary doctrine is well stated in Broom's Legal Maxims (6 Am. Ed. of 1868), at top page 105, star page 137 *et seq.: "Consensus tollit errorem* (2 Inst.,

123), that is, the acquiescence of a party who might take advantage of an error obviates its effect. In accordance with this rule, if the venue in an action is laid in the wrong place, and this is done *per assensum partium,* with the consent of both parties, and so entered of record, it shall stand; and where, by consent of both plaintiff and defendant, the venue was laid in London, it was held that no objection could afterwards be taken to the venue, notwithstanding it ought, under a particular act of Parliament, to have been laid in Surrey, for *per curiam, Consensus tollit errorem.* On the maxim under consideration depends also the important doctrine of waiver, that is, the passing by of a thing, a doctrine which is of very general application both in the science of pleading and in those practical proceedings which are to be observed in the progress of a cause from the first issuing of process to the ultimate signing of judgment and execution. If a party, after an irregularity has taken place, consents to a proceeding which, by insisting on the irregularity, he might have prevented, he waives all exceptions to the irregularity. This is a doctrine long established and well known. *Consensus tollit errorem* is a maxim of the common law, and the dictate of common sense. It may appear in some measure superfluous to add that the consent which cures error in legal proceedings may be implied as well as expressed; for instance, where, at the trial of a cause, a proposal was made by the judge in the presence of the counsel on both sides, who made no objection, that the jury should assess the damages contingently, with leave to the plaintiff to move to enter a verdict for the amount found by the jury, it was held that both parties were bound by the proposal, and that the plaintiff's counsel was not, therefore, at liberty to move for a new trial on the ground of misdirection, for *qui tacet consentire videtur,* the silence of counsel implied their assent to the course adopted by the judge, and 'a man who does not speak when he ought, shall not be heard when he desires to speak.' " · It is often convenient for the judge, parties, and counsel that such arrangement should be made, and where it is done with the acquiescence, express or implied, of all interested, it should be allowed to stand and the proceeding considered, so far as its validity is concerned, as if it had been regularly conducted, for that no party should be allowed to take advantage of his own wrong is another cardinal maxim of the law, as well as a precept of good morals. But we should always be careful to see that the proper consent has been fairly given. We do not doubt as to the true meaning of this transaction. The judge had clearly announced his decision, upon defendants' motion, that the verdict was not only against the weight of evidence as to the cause of action, but that if it was right in that respect, the damages were excessive, and for these reasons the verdict would be set aside. It is impossible to misunderstand his language, which imported but one thing, that

the verdict should be set aside. But he desired to be perfectly fair to the parties, and therefore stated that the plaintiff *ought* to have something. Here is the only obscurity in the whole proceeding. Whether the learned judge thought that she was legally, or only morally, entitled to something does not clearly appear; but this is deemed an immaterial consideration. His mind was made up as to setting aside the verdict, and a formal order (or judgment, so called) to this effect was drawn up and signed by him and delivered to the clerk. We understand that, in law, this did set aside the verdict, and that the signing of a judgment for $1,700, the amount fixed by him, was merely for the purpose of substituting that judgment for the other, if the parties thereafter should so agree, and not having agreed, the $1,700 judgment became a nullity, and the judgment setting aside the verdict continued in force. This is the fair construction of the matter, for this carries out the manifest purpose of the judge and the parties.

But there is another view. If the two judgments were prepared and signed, so that the parties might thereafter choose between them, the consent that the proceeding might remain in that shape until their respective clients were heard from—for that is clearly what was intended by all—and the setting of the next Tuesday for calling the matter up, imparted validity to the decision of the court, even on Wednesday, and for this reason: Tuesday was not fixed as the only, or final, day on which the matter could be heard. Such a narrow construction of their agreement would defeat the obvious intent, which was that there should be sufficient time to hear from their clients and to receive proper authority to act in the premises, and the length of time, as being limited to the next Tuesday, was not of the essence. It was merely considered as a convenient time to take the matter up again, so that it would not be overlooked. What occurred on Tuesday and Wednesday makes this clear. The judge asked plaintiff's counsel on Tuesday if he had heard from their client, which question he answered in the negative; but on the next day, Wednesday, plaintiff's counsel called the matter to the attention of the court, and stated that he had heard from his client and that she declined to accept $1,700 and costs. If it had not been understood that, by tacit consent, the matter had been left over until she should be heard from, why mention the matter at all on Wednesday? It must be inferred that judge and counsel were waiting to hear from the respective parties, so that the arrangement, which had received their consent the week before, might be carried out with binding authority. The purpose was to settle the case, if possible, upon the basis of the judge's suggestion, which was unfavorable to the defendant, in the view he had already taken of the case, and the time of settlement was unessential, except in the respect that it was necessary that the required

time should be used in procuring their consent, so that the agreement would stand. Tuesday of the next week was merely named as a convenient day upon which to renew the matter, as the criminal court would then be sitting, and was not intended to be the final day. This construction of the agreement is necessary in order to preserve the good faith of all parties and to execute the apparent intent.

But there is still another view which is controlling. Upon the basis that there was a misunderstanding among those who were parties to the agreement—and there appears to have been, by the argument before us —the law will never permit any injustice to be done under such circumstances. The only way to correct the error is to set aside the verdict and give the parties a new start. It would be grave injustice to proceed otherwise. The law strives to do what is right and just among litigants, as determined, it is true, by fixed rules and principles; but in many respects the days of legal quibbles and technicalities have passed, and a more enlightened age of civilization has taken a different view of the rights of parties, as they should be administered in the courts, and has, therefore, liberalized their practice and procedure. There is no reflection on judge, counsel, or parties in this case, and no fault to be found with any one. Defendant's counsel are merely guarding with proper care and commendable loyalty the legal rights of their clients, as it is their duty to do, and it may be said of all those who took part in the case, that they have simply performed their duty in the premises.

We are of the opinion that the ground just taken by us is also a safe one upon which to rest our conclusion, viz., that by the combined effort of the judge, counsel, and parties to reach a definite agreement, there has resulted, unfortunately, a misunderstanding as to the time allowed for effecting a settlement, for the purpose of doing substantial justice, with, however, a firm decision of the judge, which was announced from the bench and reduced to the form of a judgment, signed by him, that the verdict should be set aside. The intention is clear and should be effectuated, as it violates no settled principle of law to do so, and justice demands that it be done.

But apart from this, the legal effect of the transaction was to set aside the verdict, with leave to strike out the order if the proposition of the judge was afterwards accepted. This was the substance of it. The defendant had already agreed to do it, and the judgment for $1,700 was signed by the judge to await the acceptance or rejection of the plaintiff, as a convenient way of effecting a settlement, if both parties agreed, without the further intervention of the court.

Counsel were fully justified in maintaining their positions and defending their client's legal rights, as they did by fair and legitimate argu-

ment in this Court. The benevolent object of the judge was disappointed, leaving the alternative order to stand. The merits of the case and the question of removal are not before us.

Affirmed.