MANUFACTURERS' FINANCE ACCEPTANCE CORPORATION v. C. H. JONES AND W. S. SCALES.

(Filed 16 November, 1932.)

**Trial G a—Trial court may set aside verdict in his discretion during term, but not thereafter unless parties consent to continuance.**

The trial judge has the discretionary power during the term to set aside a verdict as being against the weight and credibility of the evidence, and his action in so doing is not ordinarily reviewable, C. S., 591, but an order setting aside the verdict on such grounds at a succeeding term of court upon a continuance of the defendant's motion therefor will be reversed on appeal where the record shows that the plaintiff did not consent to the continuance and did not waive his right to except thereto.

APPEAL by defendants from *Stack, J.,* at September Term, 1932, of FORSYTH. Reversed.

This was an action brought by plaintiff against defendants to recover the sum of $2,803.49 with interest on same from 15 April, 1930, secured by conditional sales contract and for the recovery and sale of the property. The plaintiff alleges that on 15 April, 1929, the defendants executed to Thos. A. Branon, a conditional sales agreement on 1 Disc Standard Model Biophone Equipment, which was installed in the Lincoln Theatre, Winston-Salem, North Carolina, for which they agreed to pay the sum of $4,500 payable as follows: *$1,250 in cash,* and $3,250 payable $225 on 15 May, 1929, and a like amount on the 15th day of each month thereafter until ten monthly payments had been made, and two payments, 11 and 12 months after date, in the sum of $500

each. That on said date the defendants executed to the said Thos. A. Branon a promissory note in the sum of $3,250, payable $225 per month for the first ten months and $500 per month for the eleventh and twelfth months, with interest on said notes at 6 per cent per annum from date. That on or about 4 May, 1929, the said Thos. A. Branon did transfer, sell and assign the conditional sales contract and the promissory note to the plaintiff in this action, for value received, and before maturity of any portion of said note.

The defendants admitted some of the allegations of the complaint, but "it is specifically denied that the plaintiff is a holder of the note in due course without notice of any defenses." As a further defense, the defendants, in part say: "That the defendants were unable to use the said equipment due to its failure to give service; that the said Thomas A. Branon knew at the time of the sale of the said Standard Model Biophone that the same was inferior; incomplete condition of the equipment sold to the defendants at the time the same was sold them; that the defendants are informed and believe, and so allege, that the market value of the equipment sold to them was far below the amount which they paid for the said equipment," etc.

The defendants introduced many witnesses who testified in substance as did Jack O'Kelly, who said, in part: "I am a motion picture operator and have been for about 19 years. In 1929, I was employed at the Lincoln and Rex Theatres as chief operator. I was employed there at the time the biophone equipment was installed. I didn't exactly help install it; Mr. Branon was supposed to install it, but I did little odd jobs. My duty was to operate the equipment after he made the installation, to run the pictures. I operated that equipment about four or five months, something like that. The equipment did not give continuous service for that period. You just couldn't get it to work; everything was the matter with it, as far as I was concerned, the tubes, then the speaker, then the amplifier, then the pick-ups. Sometimes it would synchronize for half a day, and then maybe only for two or three shows. The record on the biophone was supposed to synchronize with the film that was being run. For a while it would talk and synchronize together, and then get out, and then it would stop talking and we wouldn't have any sound at all. Sometimes the picture would be saying one thing and the record another, and just different things; today it would be one thing, tomorrow another, sometimes the same thing right over and over."

C. H. Jones testified, in part: "We finally took that biphone equipment out and it is packed up down here in a room now. We took it out because it didn't give service. We couldn't return it to the seller after we took it out because he wouldn't accept it. . . . Then it wouldn't

work and Mr. Branon would come back from time to time and have people to work on it, and we paid them a right smart more on it. He was telling us that it would work. Then he would come back and tell us he was building other machines, or making improvements on these machines, and as soon as he could get to us he would put another one in the place of this one, if he couldn't get this one to work. . . . The last time he came when we made the last payment we did make, and he told us that he was ready then in the next week or two to put in a new machine that would take care of the situation. He didn't say in a week or two; he said 'just right away.' Then he didn't do that, and then when he came back again he told us that he had just wired for our connections, and so on, and then he didn't do any more to the machine and didn't come back any more. He never did offer to take the machine back. I saw Mr. Branon perhaps a dozen times in all after he sold us this equipment; *I saw him at one time with the conditional sales agreement and note in his possession, but I don't know* that I saw the signature on it."

The contract was entered into 15 April, 1929, and plaintiff contended it purchased the notes and conditional sale shortly afterwards, 4 May, 1929.

The issues submitted to the jury and their answers thereto were as follows:

"1. Did the defendants execute the note and conditional sales agreement, as alleged in the complaint? Answer: Yes.

2. Is the plaintiff the owner and holder in due course of the note described in the complaint? Answer: No.

3. What amount, if any, are the defendants indebted to the plaintiff? Answer: Nothing.

4. Is the plaintiff the owner and entitled to the immediate possession of the personal property described in the complaint? Answer: Yes."

The following is in the record at the term the action was tried: "In the Forsyth County Court—(January 4th Term, 1932) minutes of the clerk (Docket Book 53, p. 154): The plaintiff moves to set the verdict aside. Motion continued until the next term of this court. Prayer for judgment is also continued until the next term of court. . . . Judgment tendered by defendants: North Carolina, Forsyth County—In the Forsyth County Court, January 4th Term, 1932—Title of case. (The judgment on the verdict is set forth ..... ... ...... .... judge, Forsyth County Court. The court declined to sign the judgment tendered by the defendants, to which the defendants except."

Thereafter at the January 25th Term, of the Forsyth County Court, the judge set the verdict aside as being against the greater weight of

the evidence and in the judgment said: "The court is of the opinion that the verdict is against the greater weight of the evidence, and the prayer for judgment on the verdict tendered by the defendants is disallowed by the court."

The judge of the county court in making up defendant's exceptions, among other things put this in: "Upon the rendition of the verdict, the plaintiff moved to set aside the verdict as being against the greater weight of the evidence. The defendants tendered judgment to be signed, but the court refused to sign same and intimated in open court and in the presence of counsel for both parties that he was going to set the verdict aside unless the parties could agree upon a compromise whereby defendants should make a cash payment to plaintiff, and advised the defendants to reach some settlement with plaintiff." The judge also put this in: "There was no agreement between counsel for plaintiff and counsel for defendants for this continuance, but neither party made objection."

On appeal to the Superior Court, the court below overruled defendants' exceptions and assignments of error and affirmed the judgment of the Forsyth County Court, setting aside the verdict. The defendants duly excepted, assigned error and appealed to the Supreme Court.

*Peyton B. Abbott and Hastings & Booe for plaintiff.*
*Hosie V. Price and W. Avery Jones for defendants.*

CLARKSON, J. The plaintiff says the question involved in this case is: Did the trial court commit prejudicial error in continuing to a subsequent term plaintiff's motion to set aside the verdict, and in acting upon the motion at such subsequent term by allowing the motion and setting aside the verdict, under the circumstances of this case? We think so.

C. S., 591, is as follows: "The judge who tries the cause may, in his discretion, entertain a motion to be made on his minutes, to set aside a verdict and grant a new trial upon the exceptions, or for insufficient evidence, or for excessive damages; *but such motion can only be heard at the same term at which the trial is had.* When the motion is heard and decided upon the minutes of the judge and an appeal is taken from the decision, a case or exceptions must be settled in the usual form, upon which the argument of the appeal must be had." (Italics ours.) See *S. v. McLamb, ante,* at p. 451.

There is no question but that the Forsyth County Court in its sound discretion, not arbitrarily or capriciously, had the right to set the verdict aside as "against the greater weight of the evidence." This is so well settled that it is not debatable. From this ordinarily there is no appeal. *Hoke v. Whisnant,* 174 N. C., 658; *Hardison v. Jones,* 196 N. C., 712.

"In *Settee v. Electric Ry.*, 170 N. C., 365, it was said: 'The discretion of the judge to set aside a verdict is not an arbitrary one, to be exercised capriciously or according to his absolute will, but reasonably and with the object solely of presenting what may seem to him an equitable result.' And again in *Cates v. Tel. Co.*, 151 N. C., 506: 'It rests in his sound discretion, which should be exercised always, not arbitrarily, but with a view to a correct administration of justice according to law.'" *Bailey v. Mineral Co.*, 183 N. C., at p. 527. In the *Bailey case, supra,* it will be noted that the facts were "The jury returned a verdict in favor of the plaintiffs, and the defendants at the same term duly entered a motion to have the same vacated and set aside. This motion, *by consent,* was continued to be heard in vacation at some time and place convenient to the parties and to the court." Under that consent agreement, the court upon notice to the counsel set the verdict aside as "contrary to the weight of the evidence."

Now under C. S., 591, we have clear and strong legislative language "but such motion can only be heard at the same term at which the trial is had." Now this statute of course can be waived by express or implied consent. On this record there is no express consent and taking the record as a whole there was no implied consent, we think the defendants did all that was necessary to preserve their legal rights under all the facts and circumstances of this case. We can see no consent express or implied made by defendants to waive their legal rights under the statute.

The cases examined all seem to be premised that to waive the provisions of C. S., 591, the continuance must be by consent. *England v. Duckworth,* 75 N. C., 309; *Moore v. Hinnant,* 90 N. C., 163; *Myers v. Stafford,* 114 N. C., 231; *Stilley v. Planing Mills,* 161 N. C., 517.

In *Clothing Co. v. Bagley,* 147 N. C., at p. 38, *Brown, J.,* says: "His Honor had no right to set aside the verdict at the succeeding June Term, although the said judge held both terms, unless the parties to the action had consented to the continuance of such motion to the June Term. At June Term the judge finds as a fact that such consent had been duly given at March Term, and that finding, entered of record, is practically an amendment of the record at March Term. We cannot review the exercise of his Honor's discretion in granting a new trial upon the ground that the verdict is against the weight of the evidence!" *Decker v. R. R.,* 167 N. C., 26, is not at variance with the position here enunciated. In that case, at p. 31, it is said: "The legal effect of the transaction was to set aside the verdict, with leave to strike out the order if the proposition of the judge was afterwards accepted. This was the substance of it." And this was done at the term in which the action was tried.

From the facts gathered on the hearing and the record, the Lincoln Theatre was a Negro place of amusement operated by defendants. A jury has found for the defendants. A verdict is the unanimous decision made by a jury and reported to court and is a substantial right. *Sitterson v. Sitterson*, 191 N. C., 319, 131 S. E., 641.

Defendants through their counsel seemed to have used due care, as appears from the record, not to consent to a continuance of the case, either by express or implied language or conduct. They seem to have been cautious and polite about the matter. As a matter of common knowledge this whole proceeding was in an Anglo-Saxon atmosphere. A jury has, and as the evidence indicates, decided with the defendants that the vendor was putting over a worthless talking picture machine in the Negro Lincoln Theatre, and the plaintiff corporation that purchased the notes and now own same had notice. From the evidence: "The record on the biophone was supposed to synchronize with the film that was being run. For awhile it would talk and synchronize together, and then get out, and then it would stop talking and we wouldn't have any sound at all. Sometimes the picture would be saying one thing and the record another."

It seems as if the vendor sold defendants a "crazy biophotophone" or talking picture machine. The defendants in their brief say in regard to the judge making up their exception in the Forsyth County Court and his finding, that their attitude "was merely a peaceful protest." We can understand their respect for the court, and this ought not to be held against them, when the record as a whole shows that their exceptions and assignments of error were to the effect that they never consented to waive the rights that the statute gave them. In fact the Forsyth County Court judge says "There was no agreement."

We think there was prejudicial error for which the judgment of the court below must be

Reversed.